LYKES BROS. STEAMSHIP CO., INC., Appellant,

v.

Chester BENBEN, Appellee.

No. B2083.

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 14, 1980.

Rehearing Denied June 11, 1980.

Kenneth D. Kuykendall, Royston, Rayzor, Vickery & Williams, Houston, for appellant.

Richard P. Hogan, Helm, Pletcher & Hogan, Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

JUNELL, Justice.

This is an appeal from a judgment awarding Chester Benben (Benben) $258,-400.00 in damages for personal injuries received in an accident which occurred on September 27, 1976 while he was working as the Chief Mate on board the Howell Lykes, a cargo vessel owned and operated by Lykes Brothers Steamship Co., Inc. (Lykes). The cause of action was pursued under both the Jones Act, 46 U.S.C.A. § 688 (1975), and under the General Maritime Law of the United States. The case was tried before Honorable James Wallace, Judge of the 215th District Court of Harris County, without a jury. Judge Wallace rendered a judgment on September 6, 1978 in favor of Benben. The judgment itself contained general findings that Lykes was negligent, that the Howell Lykes was unseaworthy, that Benben was twenty percent contributorily negligent, and that the total damages amounted to $323,000.00, which were reduced by twenty percent contributory negligence, leaving a net recovery of $258,400.00.

Lykes timely filed its request for findings of fact and conclusions of law, but none were made and filed by Judge Wallace prior to the time that he resigned as judge of the 215th Judicial District Court and assumed his responsibilities as an associate justice on the Houston Court of Civil Appeals, First District. Thereafter, Lykes filed its supplemental motion for new trial in which it urged that the successor judge, Honorable William Kilgarlin, could not make and file findings of fact and conclusions of law necessary to support the judgment and that the judgment should be set aside and a new trial granted. Judge Kilgarlin overruled that motion and made and filed findings of fact and conclusions of law submitted to him by Benben's attorney.

Lykes assigns thirty-one points of error. Finding no error, we affirm the judgment of the trial court.

■ The first three points of error deal with the questions concerning the findings of fact and conclusions of law. The first point asserts that Judge Wallace erred in failing to prepare his findings and conclusions before he resigned as judge of the 215th District Court, inasmuch as the legal effect of such action was to deny Lykes findings of fact and conclusions of law as required by the Texas Rules of Civil Procedure. The second point challenges the propriety of Judge Kilgarlin's action in making the findings and conclusions because he was not the judge who tried the case and had no basis for ascertaining the truth of the requested findings and conclusions. Point three claims that constitutional due process requires the trial judge who heard the evidence and rendered judgment in a non-jury case to make the findings of fact and conclusions of law in support of the judgment.

We hold that Judge Kilgarlin was authorized under Tex.R.Civ.P. 18 to make the findings of fact and conclusions of law. While Rule 18 does not refer specifically to findings of fact and conclusions of law, it provides that the successor judge shall hear ". . . all motions undisposed of. . ." We are of the opinion that a request for findings of fact and conclusions of law is a motion under Rule 18. The Texas Supreme Court in *Storrie v. Shaw*, 96 Tex. 618, 75 S.W. 20 (1903), the case so much relied upon by Lykes, twice referred to the request for findings of fact and conclusions of law as a motion.

At the time of the trial in 1902 of *Storrie v. Shaw*, there was no statute or rule of procedure governing the question here presented. In that case the term of office of Judge Wilson, the judge who tried the non-jury case, expired without his having made findings of fact and conclusions of law. Thereafter, findings of fact and conclusions of law were made by Judge Wilson at a time when he had been succeeded as

judge by the Honorable W. P. Hamblen. The findings of fact and conclusions of law were signed not only by Judge Wilson but also by Judge Hamblen. The supreme court, answering certified questions from the First Court of Civil Appeals, held that Judge Wilson had authority after the expiration of his term of office to make and file such findings and conclusions in response to the motion of one of the parties. The supreme court opinion stated that no authority directly in point had been found but that it regarded the signing of bills of exceptions as being most analogous to the question presented. A number of conflicting authorities were cited. The court concluded that the weight of authority and better reasoning support the rule that in cases of removal, resignation or expiration of the term of the judge who tried the case, he was the proper person to sign bills of exceptions and his successor could not do so, as he was a stranger to the judicial proceeding related therein. Applying the reasoning in the cases involving bills of exceptions, the supreme court stated that it would be impossible for a judge who had not heard the testimony to express in findings of fact and conclusions of law the impression which conflicting evidence had made upon the mind of one who heard it. The court stated that it was especially important that the judge who tried the case should make and file the findings of fact and conclusions of law, and the court failed to see any sound objection to the conclusion that upon the retirement of a judge the judicial function survives and continues as far as necessary for him to complete that which reflects the operation of his own mind or relates to his own conduct in the particular case.

Although the decision by the Texas Supreme Court in *Storrie v. Shaw* appears sound and the result of logical reasoning, the Texas Supreme Court and the Texas Legislature in a number of actions have apparently determined that the logic of the decision in that case should be sacrificed to the need for a more efficient judicial process. For example, Tex.Rev.Civ.Stat.Ann. art. 2248 (Vernon 1971), authorizes a successor judge to make findings of fact and conclusions of law and to approve statements of facts and bills of exceptions in cases where the predecessor judge dies after a trial and before those post-trial matters have been completed. Also, Tex.R. Civ.P. 18, applicable in cases where the predecessor judge dies, resigns or becomes unable to hold court, authorizes the successor judge to hear and determine all motions undisposed of and to approve statements of facts and bills of exceptions. The source of Tex.R.Civ.P. 18 was 1913 Tex.Gen.Laws, ch. 130, at 260. Because of these actions of the Texas Supreme Court and the Texas Legislature, we are satisfied that the reasoning of the court in *Storrie v. Shaw* no longer applies to preclude a successor judge from acting in such matters.

We believe that our decision on this point is supported by the following cases: *Stronck v. Stronck*, 538 S.W.2d 854 (Tex. Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.); *Fortenberry v. Fortenberry*, 545 S.W.2d 40 (Tex.Civ.App.—Waco 1976, no writ); *Horizon Properties Corporation v. Martinez*, 513 S.W.2d 264 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.). Although we recognize that *Stronck* dealt with approval of a statement of facts and the last two cases involved the death rather than the resignation of the predecessor judge, the following statement by the El Paso Court of Civil Appeals in *Horizon Properties Corporation v. Martinez* fairly summarizes our view on this question:

Rule 18, Tex.R.Civ.P., provides for all pending motions to be continued following the death of a judge until his successor has taken office. While Rule 18 does not specifically name findings of fact and conclusions of law, we think the language is broad enough to include findings of fact and conclusions of law, so that they were timely in this case. 513 S.W.2d at 266.

In the present case we also disagree with the claim by Lykes that constitutional due process requires the trial judge who heard the evidence and rendered judgment to make the findings of fact and conclusions of law. While the federal courts require that

the trial judge who heard the evidence make the findings and conclusions, the requirement is not based on constitutional grounds but on the provisions of Fed.R. Civ.P. 63. *Arrow-Hart, Inc. v. Phillip Carey Co.*, 552 F.2d 711 (6th Cir. 1977). Appellant has cited no authority in which the question has been decided on constitutional grounds, and we have found none.

For the reasons set forth above we overrule the first three points of error.

Points five through twenty-two attack the trial court's findings of negligence of Lykes and unseaworthiness of the vessel. Those points include claims of no evidence, insufficient evidence and that the findings are against the great weight and preponderance of the evidence. The findings complained of are that Lykes was negligent: in failing to inform and properly warn Benben that the top rung of the ladder in question had been cut off, in failing to chain and placard the ladder, in failing to remove the ladder until it could be repaired and in providing an unsafe ladder, the top rung having been removed, rendering the vessel unseaworthy.

Benben was injured while descending a vertical metal ladder which was about twelve feet long. The ladder extended from the top of the resistor house down to the main deck of the ship. The ladder had been damaged before the vessel sailed from Houston, but Benben, who was the Chief Mate, and Captain Rivas, the master of the ship, had decided that the ladder was safe for use even though the top rung was bent and fractured at one end. The ladder received further damage while cargo was being discharged at Barcelona, Spain, but again Benben decided that the ladder was safe for use. He notified Captain Rivas of the additional damage and recorded it in the ship casualty log. Several days later Captain Rivas checked the ladder. Seeing that the top rung was bent further and believing it was not safe to use, Captain Rivas order Chief Engineer Staewuen to have the top rung of the ladder removed. The record is not clear whether Captain Rivas initiated the removal of the rung or

whether Chief Engineer Staewuen did so. In any event Rivas and Staewuen discussed the matter and were in agreement that the top rung should be removed. Both thought it would be safer to use the ladder without the top rung than with a top rung damaged to the extent it was at that time. The top rung of the ladder was at most about four inches below the deck at the top of the resistor house, and most of the witnesses were of the opinion that it was unlikely that anyone ascending or descending the ladder would step on the top rung.

The top rung of the ladder was sawed off under orders from Chief Engineer Staewuen. This occurred while the Howell Lykes was lying at anchor at Ilichevsk, Russia, waiting on the availability of a dock-side berth. No witness testified that Benben was ever notified that the top rung of the ladder had been removed. He testified positively that he was not so notified and in fact he did not know that the top rung was missing until the accident in question occurred.

Benben as Chief Mate had the primary responsibility for seeing that all top-side equipment, including the ladder in question, was maintained in good repair and in a seaworthy condition. Repairs would be made by the deck crew under the supervision of the Chief Mate; or if the deck crew could not handle the repairs, they would be made by the engineering department under the supervision of Chief Engineer Staewuen.

While the Howell Lykes was at anchor at Ilichevsk, work was done by both the engineering department and the deck department on the top of the resistor house. The ladder rung was removed about ten days before the accident in question while the Chief Engineer was having work done on the top of the resistor house. For two to three days before the accident Benben was supervising work by his deck crew on the top of the resistor house, and it was necessary for Benben to be on top of the resistor house several times to check on that work. However, Benben testified that on the day of the accident he used the aft ladder on

the starboard side of the resistor house to go from the deck up to the top of the resistor house. The ladder with the missing rung was the forward ladder on the starboard side of the resistor house. The evidence was conflicting as to whether there were two ladders on the starboard side of the resistor house. Benben testified very positively that there were two ladders. All other witnesses who testified on the question stated with equal conviction that there was only one ladder on the starboard side. Benben did not remember when he had last used the forward starboard ladder, although he had used it on more than one occasion while the ship was lying at anchor at Ilichevsk. He stated that he "must have used it" the day the deck crew was doing work up there, shown by other evidence to be Saturday, September 25, two days before the accident. In any event when Benben used that forward starboard ladder, he did not notice that the ladder rung was missing.

On Sunday, September 26, the vessel was moved from the point where it had been anchored to a berth at dock-side, and the stevedores began discharging cargo from the port side of the ship. Discharge of cargo continued on Monday morning, September 27; during that morning Benben climbed the aft starboard ladder to the top of the resistor house to check on work being done there by his deck crew. He was up there about five minutes. While there he found a dead bird which he tried to throw over the starboard side of the vessel. Wind was blowing from the starboard side and the bird landed on the main deck below. Benben walked over to the forward starboard ladder, turned his back to the starboard side of the vessel and stepped back and down to the second rung of the ladder as he held on to the stanchions, or vertical pipe railings, extending upward from the deck on top of the resistor house. As he stepped down the rungs of the ladder, he released the grip he had with his left hand on the upright railing and reached for the top rung of the ladder, intending to use it as a hand hold. As he reached for the top rung of the ladder, he loosened the grip he had with his right hand on the other up-right railing. As he discovered that the top rung of the ladder was missing, he lost the grip he had with his right hand and fell backward to the deck below, receiving the injuries made the basis of this suit.

A marine surveyor, who had had experience working as a mate on a seagoing vessel, testified as an expert witness for Benben. The substance of his testimony was that the top rung of the ladder should have been replaced, not simply removed that a barricade should have been placed to prevent use of the ladder until the rung was replaced, that it was reasonable to use the ladder rung as a hand hold and that the master of the ship should have informed Benben that the rung had been removed.

The chief engineer testified that a missing ladder rung can cause a man to fall and that some notice should have been given when the master decided to have the ladder rung removed.

The first assistant engineer testified in substance that notice should be given to people who might be affected by the removal of a ladder rung.

A naval architect, a witness for Lykes, admitted that a missing ladder rung makes the ladder dangerous to a crewman using it.

 The negligence cause of action was brought under the Jones Act, 46 U.S.C.A. § 688 (1975), which is remedial legislation designed to give a seaman the same right to recover against his employer as was given a railroad worker under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. (1972). *Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957). Evidence of "the slightest negligence" is sufficient to sustain a finding of Jones Act liability. *Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958 (5th Cir. 1969); *Perry v. Morgan Guaranty Trust Company of New York*, 528 F.2d 1378 (5th Cir. 1976). The foregoing evidence supports the trial court's finding of negligence and unseaworthiness.

 Although Lykes has challenged the trial court's findings of negligence and un-

seaworthiness, the real thrust of its complaint is that Benben is completely barred from recovery because his own contributory negligence in failing to discover the correct the condition of the ladder was a breach of his affirmative and primary duty as chief mate to see that the ladder in question was kept in good repair and that it was safe for use. Point four presents this alleged error, and Lykes relies on *Walker v. Lykes Bros. S.S. Co., Inc.*, 193 F.2d 772 (2nd Cir. 1952). That case announced what has come to be known as the "primary duty rule." Under that rule an employee may not recover against an employer for injuries occasioned by his own neglect of some independent duty arising out of the employer-employee relationship.

We feel that the rule announced in *Walker v. Lykes* does not apply to the instant case. There the plaintiff, master of the vessel, had full knowledge of the very defects which caused his injury and failed to see that the defects were repaired although he had many opportunities to do so. Here Benben had no knowledge of the absence of the top rung of the ladder, the defect which caused his injury. He did know that the ladder rung had been damaged, but he and the master of the ship had decided that it was safe for use. The master, without giving Benben any notice whatsoever, later determined that the ladder rung should be removed because, in his opinion, further damage rendered it unsafe. We are unwilling to apply the rule announced in *Walker v. Lykes* to the facts developed in the instant case.

In points twenty-five through twenty-eight Lykes claims that the damages found by the trial court were excessive, were not supported by sufficient evidence, and were not properly computed under the Jones Act and General Maritime Law. We overrule these points. We hold that the damages finding was not excessive and there was sufficient evidence to support it. We also hold that the record does not show that the trial court improperly computed damages. The trial court merely found total damages of $323,000.00 for past

and future loss of earnings, past and future physical impairment and past and future physical pain and mental anguish. On this record there is no way to determine that the trial court included any improper elements of damages. Lykes claims that the method of calculation of damages under the Jones Act and General Maritime Law is different from Texas damage calculations and that we should presume that the trial court included improper elements of damages in his findings. We hold to the contrary. We presume that the trial court did not include any improper elements of damages and that the trial court disregarded incompetent evidence and improper elements in arriving at his decision. *Bellows v. Crow*, 557 S.W.2d 861 (Tex.Civ.App.—Tyler 1977, writ dism'd); *Lambert v. Lambert*, 545 S.W.2d 542 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *City of Arlington v. Tex. Elec. Serv. Co.*, 540 S.W.2d 580 (Tex.Civ.App.—Forth Worth 1976, writ ref'd n. r. e.). There is ample competent evidence from which the trial court could conclude, as it did, that the total damages to Chester Benben were $323,000.00.

Point thirty claims that the trial court erred in failing to make additional findings of fact and conclusions of law as requested by Lykes. Tex.R.Civ.P. 298 requires that a request for additional findings be made within five days after the trial judge filed his original findings of fact and conclusions of law. Here the original findings were filed on December 20, 1978 and the additional findings were not requested until December 29, 1978. This request did not comply with the requirements of Rule 298. The trial court did not err in refusing to make additional findings, and Lykes has waived its right to complain of such refusal on appeal. *Adams v. Houston Belt & Terminal Railway Company*, 405 S.W.2d 838 (Tex.Civ.App.—Houston 1966, no writ); *Mosolowski v. Mosolowski*, 562 S.W.2d 24 (Tex.Civ.App.—Tyler 1978, no writ); *Elrod v. Elrod*, 517 S.W.2d 669 (Tex.Civ.App.—Corpus Christi 1974, no writ). Point thirty is therefore overruled.

Point thirty-one is overruled because it presents nothing but a recapitulation of the matters raised in earlier points and contends that all of the matters previously complained of should cause a reversal and remand.

Having considered and overruled all of the points of appeal, we affirm the judgment of the lower court.