ACCEPTED
01-14-00761-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/12/2015 7:18:11 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00761-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/12/2015 7:18:11 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS

### WINNIE JEWEL HOWARD

#### Appellant,

#### v.

### STEPHEN HENRY HOWARD

#### Appellee.

### On Appeal from Cause No. 2011-39444
### in the 311th Judicial District Court of
### Harris County, Texas

### APPELLEE'S REPLY BRIEF

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS

## WINNIE JEWEL HOWARD

### Appellant,

### v.

## STEPHEN HENRY HOWARD

### Appellee.

### On Appeal from Cause No. 2011-39444
### in the 311th Judicial District Court of
### Harris County, Texas

## APPELLEE'S REPLY BRIEF

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

Appellee, STEPHEN HENRY HOWARD, files this Appellee's Reply Brief.

## IDENTITY OF PARTIES AND COUNSEL
### (pursuant to TEX. R. APP. P. 38.1(a))

The following is a complete list of all parties to the trial court's appealable order as well as the names and addresses of all trial and appellate counsel.

| | |
|---|---|
| Appellants: | Winnie Jewel Howard |
| Trial and Appellate Counsel: | Ronique Bastine Robinson<br>Bastine and Associates<br>State Bar No. 01895365<br>12603 Southwest Freeway, Suite 571<br>Stafford, Texas 77477<br>Telephone: (281) 240-7979<br>Telecopier: (281) 652-5921<br>Email:roniquebastine@entouch.net |
| Appellee: | Stephen Henry Howard |
| Trial and Appellate Counsel: | R. Scott Poerschke, Jr.<br>The Ogg Law Firm, PLLC<br>State Bar No. 24067822<br>3215 Mercer, Suite 100<br>Houston, Texas 77077<br>Telephone:  (713) 974-1600<br>Telecopier:  (713) 621-2106<br>Email:  scott@ogglawfirm.com |
| trial court : | Judge Denise V. Pratt (now Judge Alicia K. Franklin)<br>311th Judicial District Court of Harris County, Texas<br>Harris County Civil Courthouse<br>201 Caroline, 8th Floor<br>Houston, Texas 77002 |

# TABLE OF CONTENTS
(pursuant to TEX. R. APP. P. 38.1(b))

IDENTITY OF PARTIES AND COUNSEL ................................................... 3

TABLE OF CONTENTS .......................................................................... 4

INDEX OF AUTHORITIES .................................................................... 6

STATEMENT OF THE CASE .................................................................. 10

    1.   NATURE OF THE CASE ............................................................ 10

    2.   COURSE OF PROCEEDINGS.................................................... 10

    3.   TRIAL COURT 'S DISPOSITION ............................................ 11

STATEMENT ON ORAL ARGUMENT .................................................. 14

STATEMENT OF FACTS ....................................................................... 16

    1.   MARRIAGE AND DIVORCE ..................................................... 16

    2.   STEPHEN HENRY HOWARD'S EMPLOYMENT WITH
        HOUSTON POLICE DEPARTMENT........................................... 17

    3.   HPOPS PENSION BENEFITS .................................................... 18

SUMMARY OF THE ARGUMENT ....................................................... 23

    1.   ISSUE 1 AND 2: THE NOVEMBER 28, 1988 "DECREE OF
        DIVORCE" .................................................................................. 23

       A.   AMBIGUITY ...................................................................... 27

          I. THE DECREE'S RECITALS .................................................. 34

          II.   THE PLAIN MEANING OF "VESTED" ............................. 40

          III.   "VESTED" MODIFIES "PENSION PLAN"........................ 42

          IV.   "EXISTING BY REASON OF PETITIONER'S
             EMPLOYMENT DURING THE MARRIAGE" ................... 44

B.    INTERPRETATION ................................................... 44

2.    ISSUE 3 AND 4: APPELLANT COUNSEL'S LATE ARRIVAL TO TRIAL ............................................................... 50

3.    ISSUE 5: DENIAL OF MOTION FOR NEW TRIAL ................. 54

4.    ISSUE 6: FINDINGS OF FACT ................................................ 57

PRAYER ........................................................................................ 59

CERTIFICATE OF SERVICE ....................................................... 60

CERTIFICATE OF COMPLIANCE .............................................. 61

# INDEX OF AUTHORITIES
(pursuant to TEX. R. APP. P. 38.1(c))

**Cases**

2900 Smith, Ltd. v. Constellation NewEnergy, Inc., 301 S.W.3d 74 (Tex.App.-Houston [14 Dist.] 2009) ........................................................................... 58

All Metals Fabricating, Inc. v. Ramer Concrete, Inc., 338 S.W.3d 557 (Tex. App.—El Paso 2009, no pet.)........................................................................... 34

Allen v. Allen, 717 S.W.2d 311 (Tex.1986) ..................................................... 24

Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C., 284 S.W.3d 416 (Tex. App.—........................................................................................................... 46

Berry v. Berry, 647 S.W. 2d 945 (Tex. 1983)................................................... 47

Beshears v. Beshears, 423 S.W.3d 493 (Tex. App.—Dallas 2014, no pet.).... 24, 36, 37

Burlington N. & Santa Fe Ry. Co. v. S. Plains Switching, Ltd., 174 S.W.3d 348 (Tex. App.—Fort Worth 2005, no pet.) ................................................... 35

Cameron v. Cameron, 641 S.W. 2d 210 (Tex. 1982) ....................................... 35

Cearley v. Cearley, 544 S.W.2d 661 (1976) .............................................. 41, 42

Chavez v. Chavez, 148 S.W.3d 449 (Tex.App.—El Paso 2004, no pet.) ......... 45

Coker v. Coker, 650 S.W.2d 391 (Tex. 1983) ................................. 27, 29, 36, 44

DeWitt County Electric Cooperative, Inc. v. Parks, 1 S.W.3d 96 (Tex. 1999).28

Eggemeyer v. Eggemeyer, 554 S.W.2d 137 (Tex. 1977)................................... 35

Epps v. Fowler, 351 S.W.3d 862 (Tex. 2011) .................................................. 40

Fidelity & Guar. Life Ins. Co. v. Pina, 165 S.W.3d 416 (Tex.App.-Corpus Christi 2005, no pet.).......................................................................................... 58

Fox v. Thoreson, 398 S.W.2d 88 (Tex. 1966) .................................................. 40

Gainous v. Gainous, 219 S.W.3d 97 (Tex.App.—Houston [1st Dist.] 2006, pet. denied) .................................................................................................. 30, 33

General American Indemnity Co. v. Pepper, 339 S.W.2d 660 (Tex. 1960)..... 40

Gibson v. Bentley, 605 S.W.2d 337 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) ................................................................................. 27, 30

Gonzalez v. Razi, 338 S.W.3d 167 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ......................................................................................................... 45

Hill v. Hill, 971 S.W.2d 153 (Tex. App.—Amarillo 1998, no pet.)................... 46

Iliff v. Iliff, 339 S.W.3d 74 (Tex. 2011) ........................................................... 43

In re C.A.B., 289 S.W.3d 874 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ................................................................................................................... 45

In re C.P.Y., 364 S.W.3d 411 (Tex. App.—Dallas 2012, no pet.) .................... 29

In re Columbia Med. Ctr. of Las Colinas, 290 S.W.3d 204 (Tex. 2009). ......... 54

In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P., 290 S.W.3d 204 (Tex. 2009) (orig. proceeding)................................................................... 54

In re Sigmar, 270 S.W.3d 289 (Tex. App.—Waco 2008, orig. proceeding)...... 45

In re United Scaffolding, Inc., 377 S.W.3d 685 (Tex. 2012) (orig. proceeding) ................................................................................................................... 54

Kelley-Coppedge, Inc. v. Highlands Insurance Co., 980 S.W.2d 462 (Tex. 1998)............................................................................................................. 24

Leighton v. Leighton, 921 S.W.2d 365 (Tex. App.—Houston [1st Dist.] 1996, no writ) ........................................................................................................ 35

Lewis v. Jackson Energy Coop. Corp., 189 S.W.3d 87 (Ky. 2005).................. 43

Lykes Bros. S. S. Co., Inc. v. Benben, 601 S.W.2d 418 (Tex.App. —Houston [14 Dist.] 1980) ........................................................................................... 57

Lyons v. Montgomery, 701 S.W.2d 641 (Tex.1985)......................................... 40

Malooly Bros., Inc. v. Napier, 461 S.W.2d 119 (Tex. 1970) ........................... 54

May v. Buck, 375 S.W.3d 568 (Tex. App.—Dallas 2012, no pet.) .................... 28

McCoy v. Rogers, 240 S.W.3d 267 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) ................................................................................................ 24

MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647 (Tex. 1999). 30

Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc., 56 S.W.3d 313 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) .............................. 28

Murff v. Murff, 615 S.W.2d 696 (Tex. 1981) .................................................... 54

Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517 (Tex. 1995) (per curiam) ........................................................................................................ 28

Pearson v. Fillingim, 332 S.W. 3d 361 (Tex. 2011) ......................................... 35

Shanks v. Treadway, 110 S.W.3d 444 (Tex. 2003). ................................... passim

Stavinoha v. Stavinoha, 126 S.W. 3d 604 (Tex. App.—Houston [14th Dist] 2004, no pet.) .......................................................................................... passim

Storrie v. Shaw, 96 Tex. 618, 75 S.W. 20 (1903) ............................................. 57

Taggart v. Taggart, 552 S.W.2d 422 (Tex. 1977) ..................................... 32, 47

Toler v. Sanders, 371 S.W.3d 477 (Tex. App.-Houston [1st Dist.] 2012, no pet) ................................................................................................................... 29

Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951) ................................................................................................................... 27

Vickery v. Vickery, 999 S.W.2d 342 (Tex. 1999) ............................................. 35

White v. Wah, 789 S.W.2d 312 (Tex. App.—Houston [1st Dist.] 1990, no writ) ................................................................................................................... 54

Wierzchula v. Wierzchula, 623S.W.2d 730 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) ................................................................................................ 41

Wilson v. Wilson, 44 S.W.3d 597 (Tex. App.— Fort Worth 2001, no pet.) ...... 55

Zeptner v. Zeptner, 111 S.W.3d 727 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g) ................................................................................................ 55

**Statutes**

Tex. Fam. Code Ann. § 9.006(a) ...................................................................... 25

Tex. Fam. Code Ann. § 9.006(b). ................................................................... 26

Tex. Fam. Code Ann. § 9.007(a)-(b) ............................................................. 26

Tex. Fam. Code Ann. § 9.008 ......................................................................... 25

Tex. Fam. Code Ann. § 9.008(b). ................................................................... 25

Tex. Fam. Code Ann. §§ 9.002 ....................................................................... 25

TEX. FAM. CODE. ANN. § 9.101(a). ............................................................ 26

TEX.REV.CIV. STAT. art. 6243g-4, § 14(b) ................................................. 20

**Rules**

Rule 10.1, Local Rules of the Harris County District Courts ......................... 53

Tex. R. App. P. 38.1(f) .................................................................................. 56

Tex. R. Civ. P. 18 .................................................................................... 57, 58

Tex. R. Civ. P. 320 ......................................................................................... 54

**Treatises**

Black's Law Dictionary 1595 (8th ed. 2004) .................................................. 41

Bryan A. Garner, Garner's Dictionary of Modern Legal Usage 50 (3rd ed. 2011) ........................................................................................................... 29

## STATEMENT OF THE CASE
(pursuant to TEX. R. APP. P. 38.1(d))

### 1. NATURE OF THE CASE

This is an appeal of a QDRO dividing pension benefits earned by Mr. Howard through his employment with the Houston Police Department. The pension benefits are administrated through the Houston Police Offices Pension System (or often referred to as "HPOPS"). This is not a direct appeal of the underlying "Decree of Divorce" (or Decree) signed by the trial court on November 28, 1988. Because it is not a direct appeal, no party may contest the underlying property division contained in the Decree, but the trial court may find that the Decree is ambiguous and interpret it without changing the property division.

### 2. COURSE OF PROCEEDINGS

The parties dispute the relevant sections in the Decree dividing Mr. Howard's pension plan with HPOPS. The relevant sections are provided for the Court's review in the outline of the facts below. Ms. Howard claims that the benefits should be valued on the date of retirement. Mr. Howard claims that the benefits should be valued on the date of divorce and to do otherwise, as argued by Ms. Howard, would impermissibly deprive Mr. Howard of property that was awarded to him as his separate property. Ms. Howard claims that the Decree is ambiguous and requires interpretation. Mr.

Howard counters that the Decree is unambiguous and does not require interpretation, but if this Court should determine that the Decree is ambiguous, the trial Court did not err in finding that the Decree should be interpreted to award Ms. Howard the pension benefits in accordance with the final judgment signed on February 28, 2014.

## 3. TRIAL COURT 'S DISPOSITION

On February 28, 2014, the trial court granted judgment for Stephen Henry Howard and awarded Ms. Howard "50% of $20,765.00 or TEN THOUSAND THREE HUNDRED EIGHT-TWO DOLLARS AND FIFTY-CENTS ($10,382.50) of Stephen Henry Howard's retirement/pension benefit with HPOPS." (1 C.R. at 24.) The trial court made the following findings in the judgment:

> 1. On November 23, 1979, Stephen Henry Howard ("Member") and Winnie Jewel Howard ("Alternative Payee") were married.
>
> 2. On May 31, 1980, Stephen Henry Howard began employment with the Houston Police Department.
>
> 3. On November 28, 1988, this Court rendered a decree of divorce dissolving the marriage between Stephen Henry Howard and Winnie Jewel Howard. The November 28, 1988 "Decree of Divorce" awarded Winnie Jewel Howard
>
>> [o]ne half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other benefit programs

*[existing] by reason of Petitioner's employment during the marriage.*

*4.     Since the November 28, 1988 "Decree of Divorce" is final, the decretal language (as quoted above) is operative as to Stephen Henry Howard's vested retirement/pension benefits that were awarded to Winnie Jewel Howard[.]*

*5.     The decree plainly provides that Winnie Jewel Howard was awarded one-half [or 50%] of any and all sums related to any vested retirement/pension plan of Stephen Henry Howard existed by reason of Stephen Henry Howard's employment during the marriage.*

*6.     Throughout the parties' marriage, Stephen Henry Howard was employed as a police officer and had a retirement benefits through his employment with the Houston Police Department. Those retirement benefits are administered through the Houston Police Officers' Pension System (often referred to as "HPOPS").*

*7.     On November 28, 1988 (the date of divorce), Stephen Henry Howard had a vested retirement/pension benefit of $20,765.00 with HPOPS and had 8 years and 6 months of credited pension service. Stephen Henry Howard had no other vested retirement/pension benefit with HPOPS on November 28, 1988. Stephen Henry Howard was not entitled to interest on his vested retirement/pension benefit on November 28, 1988.*

(1 C.R. at 23 - 24.)

On April 9, 2014, Ms. Howard filed a Motion to Extend Postjudgment Deadlines (1 C.R. at 48 – 56) and a Motion for New Trial. (1 C.R. at 37 – 47).

On May 6, 2014, Mr. Howard filed a Response in Opposition to Ms. Howard's Motion for New Trial. (1 C.R. at 59 – 73).

On May 8, 2014, the parties appeared for oral argument and the trial court granted Ms. Howard's Motion to Extend Postjudgment Deadlines, but denied her Motion for New Trial. (1 C.R. at 142).

On June 5, 2014, Ms. Howard filed a notice of appeal. (1 C.R. at 143 – 144).

## STATEMENT ON ORAL ARGUMENT
(pursuant to TEX. R. APP. P. 38.1(e))

Mr. Howard suggests that oral argument is unnecessary and is unlikely to be of significant assistance in this case.

## ISSUES PRESENTED FOR REVIEW
(pursuant to TEX. R. APP. P. 38.1(f))


ISSUE 1 RESTATED: Did the trial court err in failing to clarify the decree and finding the language of the decree unambiguous?

ISSUE 2 RESTATED: Did the trial court abuse its discretion in interpreting the language of the decree to award only the benefits available to Appellee on the date of divorce?

ISSUE THREE: Did the trial court err in starting trial prior to the arrival of Appellant's counsel when Appellant's counsel was in trial in the protective order court?

ISSUE FOUR: Did the trial court err in proceeding to trial as a default when Appellant was present though her counsel was not present?

ISSUE FIVE: Did the trial court err in failing of grant Appellant a New Trial?

ISSUE SIX: Was Appellant harmed by Appellant's preclusion to filing a Request for Findings of Fact and Conclusions of law due to resignation of the Trial Court judge?

**STATEMENT OF FACTS**
(pursuant to TEX. R. APP. P. 38.1(g))

## 1. MARRIAGE AND DIVORCE

On November 23, 1979, Stephen Henry Howard and Winnie Jewel Howard were married. (1 C.R. at 23 - 24.)

On November 28, 1988, Stephen Henry Howard and Winnie Jewel Howard both appeared with their respective attorneys before the 311th Judicial District Court (or "trial court") and presented a "Decree of Divorce" (thereafter "Decree") for the trial courts signature. (5 R.R. at 97 – 104.) The relevant portions of the Decree are as follows:

*DIVISION OF PROPERTY*

*The Court finds that Petitioner and Respondent have entered into an agreement for the division of their estate, that the agreement is just and right having due regard for the rights of each party.*

*IT IS ORDERED, ADJUDGED and DECREED that the estate of the parties is divided as follows:*

*WINNIE J. HOWARD, is awarded the following as her sole and separate property, and Petitioner is divested of all right, title, interest and claim in and to such property:*

*\* \* \**

*3.      One half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other*

*benefits programs existing by reason of Petitioner's employment during the marriage.*

*\* \* \**

*STEPHEN H. HOWARD is awarded the following as his sole and separate property, and Respondent is divested of all right, title, interest and claim in and to such property:*

*\* \* \**

*3. One half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past or present employment during the marriage.*

(5 R.R. at 97 – 104.)

Neither Stephen Henry Howard nor Winnie Jewel Howard appealed the Decree. The parties did not submit and the trial court did not issue a Qualified Domestic Relations Order ("QDRO") or similar order permitting payment of benefits from a pension, retirement, or other employee benefits plan at or near the time of divorce. In fact, until Winnie Jewel Howard filed the suit in which this appeal is taken, no party had ever submitted a QDRO for the trial court's signature.

## 2. STEPHEN HENRY HOWARD'S EMPLOYMENT WITH HOUSTON POLICE DEPARTMENT

On May 31, 1980, while the parties were still married, Stephen Henry Howard began employment with the Houston Police Department as a police officer. (1 C.R. at 23 - 24.) That date is also referred to as Howard's sworn date, or the date that he became a police officer with the City of Houston.

Stephen Henry Howard had approximately two (2) years of service with the Houston Fire Department before he became a police office with the Houston Police Department. (5 R.R. at 59.)[1]

Because Stephen Henry Howard is a police officer employed by the Houston Police Department, he is entitled to certain retirement benefits. His retirement benefits are administered through the Houston Police Officers' Pension System (often referred to as "HPOPS" or "the System") and Mr. Howard is a member of HPOPS. (2 R.R. at 9, *ll*. 9-17.) The only retirement plan at issue in this case is Stephen Henry Howard's retirement plant with the HPOPS. Mr. Howard began making contributions to HPOPS on his sworn date – May 31, 1980. (2 R.R. at 11, *ll*. 1-3.)

3. **HPOPS PENSION BENEFITS**

HPOPS was created in 1947 by an act of the fiftieth Legislature of the State of Texas, and is governed by TEX. REV. CIV. STAT. ANN. Art. 6243g-

---

[1] For volume 5 of the reporter's record, no page numbers are included. Thus, the pages referenced refer to the page number of the actual PDF file.

4.  *See* <u>Stavinoha v. Stavinoha</u>, 126 S.W. 3d 604, 610 - 611 (Tex. App.—Houston [14th Dist] 2004, no pet.).   HPOPS is a single employer defined benefit pension plan covering police officers employed full time by the City of Houston.  HPOPS is a local government plan and, therefore, is not subject to the Employee Retirement Income Security Act of 1974 (ERISA).

HPOPS contains different benefits that vest upon a certain number of years of credited service with the City of Houston.  A brief overview of each of these benefits and the time that each of these benefits vest are listed in the following table:

| Vesting Period | Benefit |
| --- | --- |
| Less than 10 years of service[2] | Return of Contributions: Credit is automatically cancelled and all employee contributions will be refunded without interest. (2 R.R. at 11, *ll* 12 – 15.) |
| More than 10 years of service, but less than 20 years of service[3] | Return of Contributions:  Credit is automatically cancelled and all employee contributions will be refunded without interest.<br><br>[OR]<br><br>Delayed Retirement:  Payable at age 60 which is calculated at 2.75% of final average |

---

[2] Mr. Olinger, the HPOPS pension benefits director, affirms that return of contributions vest with less than ten years of service.  (2 R.R. at 17, *ll*. 11 – 15.)

[3] Mr. Olinger affirms that an officer is entitled to delayed retirement upon after ten years have vested with the Houston Police Department.  (2 R.R. at 13, *ll*. 4 – 8.); (2 R.R. at 14, *ll*. 16 – 18).

| | |
|---|---|
| | pay of each year of credited pension service. (2 R.R. at 12, *ll.* 20 − 24.); (2 R.R. at 47). |
| 20 years or more of credited pension service[4] | Employee may (1) enter DROP[5], or (2) actually retire and obtain service retirement benefits. (2 R.R. at 13, *ll.* 9 − 15.); (2 R.R. at 15, *ll.* 21 − 25); (2 R.R. at 16, *ll.* 1 − 3). |

Additionally, if an employee has been employed in another department of the City of Houston (other than the Houston Police Department), that member may use that time with the other department to add to the time required for certain benefits to vest with the HPOPS. This is referred to as service credits. However, service credits were not part of HPOPS until June 18, 2001 when the 2001 Meet and Confer Agreement was passed. (2 R.R. at 42, *ll.* 15 − 17). The delayed retirement pension benefit was not part of HPOPS until November, 1998 when the 1998 Meet and Confer Agreement

---

[4] Mr. Olinger affirms that service retirement vests upon twenty years of service. (2 R.R. at 17, *ll.* 19 − 21). DROP account vests upon 20 years of service. (2 R.R. at 17, *ll.* 22 − 24). Additionally, in Stavinoha, the Fourteenth Court Appeals noted "Patrick Franey, HPOPS's Director of Administration, testified that the basic retirement benefit is a service-related benefit, which is based on years of service with a twenty-year vesting period; the member's interest in all of the above benefits is vested upon attaining twenty years of service." Stavinoha, 126 S.W. 3d at 610.

[5] *See* TEX.REV.CIV. STAT. art. 6243g-4, § 14(b) ("An active member who has at least 20 years of service with the police department may file with the pension system an irrevocable election to participate in DROP and receive a DROP benefit instead of the standard form of pension provided by this article.").

was passed. (2 R.R. at 14, *ll* 14 – 19.); (2 R.R. at 47, *ll*. 21 – 22.)[6] DROP benefits were not created until June 8, 1995, well after the date of divorce. (2. R.R. at 15, *ll*. 4 – 6.) Thus, service credits, delayed retirement pension benefits, and DROP benefits did not exist in November 28, 1988 (the date of divorce) and could not have been vested benefits awarded by the decree to Winnie Howard.

Although Stephen Henry Howard had approximately two (2) years of service with the Houston Fire Department before he become a police office with the Houston Police Department (which would make his years of pension service over 10 years), he was not eligible to receive a delayed retirement benefit on November 28, 1988. Service credits did not exist on November 28, 1988 (the date of divorce). (2 R.R. at 42, *ll*. 15 – 17.) Stephen Henry Howard could not have used the two years of service credit with the Houston Fire Department to make him eligible to receive a delayed retirement benefit on November 28, 1988. On November 28, 1988 (the date of divorce), the only retirement benefits that were vested to him was a return of contributions, because at that time he only had 8 years and 6 months of pension service with the Houston Police Department. (2 R.R. at 19, *ll*. 19 – 24.) Stephen

---

[6] The 1998 and 2001 Meet and Confer Agreements are collective bargaining agreements between the City of Houston and Houston Police Officers' Union, as the sole and exclusive Majority Bargaining Agent for and on behalf of all Police Officers of the Houston Police Defendant.

Henry Howard was also not vested (or eligible) to receive any DROP[7] benefits until February 28, 1998 and did not receive any DROP benefits until December 31, 1998. (2 R.R. at 41, *ll*. 9 – 11.)[8] Thus, on November 28, 1988, the only benefit Stephen Henry Howard was eligible to receive from HPOPS was a return of all contributions he made at that time. On November 28, 1988 (the date of divorce), Stephen Henry Howard had contributed a total of $20,765.00 into HPOPS and had 8 years and 6 months of credited pension service. (2 R.R. at 11, *ll*. 10 – 17.); (2. R.R. at 19, ll. 10 – 14.); (2 R.R. at 19, *ll*. 16 – 18.) 8 years and 6 months of credited pension service is calculated from May 31, 1980 to November 28, 1988. (2 R.R. at 11, *ll*. 18 – 23.)

---

[7] In 1998, upon 20 years of service with the Houston Police Department, Howard became eligible to retire. *See* TEX. REV.CIV. STAT. ANN. art. 6243e.2(1), § 4(a) (Vernon Supp. 2006). Rather than retire, however, Howard elected to participate in the Deferred Retirement Option Plan ("DROP") beginning on December 12, 1998. *See* id. § 5 (Vernon Supp. 2006); (2 R.R. at 41, *ll*. 9 -11). December 12, 1998 is referred to as the DROP entry date. Under DROP, Howard as an active employee while having an amount equal to his service pension benefit, plus continued pension contributions from his salary, credited to a DROP account, with the account's total sum to be distributed to or held for him upon retirement. *See* id. Ms. Howard claims that she is entitled a portion of this amount.

[8] Actually, as testified to by Mr. Mumey, Mr. Howard "back DROPed" to this date because the extra service credits were not available under 2001. (2 R.R. at 41 – 44).

## SUMMARY OF THE ARGUMENT
(pursuant to TEX. R. APP. P. 38.1(h))

1. **ISSUE 1 AND 2: THE NOVEMBER 28, 1988 "DECREE OF DIVORCE"**

ISSUE 1 RESTATED: Did the trial court err in failing to clarify the decree and finding the language of the decree unambiguous?

ISSUE 2 RESTATED: Did the trial court abuse its discretion in interpreting the language of the decree to award only the benefits available to Appellee on the date of divorce?

In Ms. Howard's first issue, she claims that the trial court erred in interpreting the language in the decree. (Appellant's Br. 9.) In the second issue, Ms. Howard states that the trial court erred in finding the decree unambiguous. (Appellant's Br. 18.) Ms. Howard fails to recognize that before the trial court may interpret the decree, the trial court must hold that the decree is ambiguous. Courts are required to first determine whether the decree is ambiguous before it can attempt to determine what the decree actually says. A finding of ambiguity is, in effect, a condition precedent to interpretation. As noted by the Texas Supreme Court, "[o]nly where a

contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument." Kelley-Coppedge, Inc. v. Highlands Insurance Co., 980 S.W.2d 462, 464 (Tex. 1998). Thus, Ms. Howard reverses the issues. Ambiguity must be discussed first.

Before delving deeper into this case, it should also be noted that the November 28, 1988 "Decree of Divorce" is an agreed judgment. Generally, judgments should be read according to the law of judgments. Shanks v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003). Agreed judgments are read according to the rules of construction applicable to the ordinary contracts. McCoy v. Rogers, 240 S.W.3d 267, 275 – 76 (Tex. App.-Houston [1st Dist.] 2007, pet. denied); Beshears v. Beshears, 423 S.W.3d 493, 500 (Tex. App.— Dallas 2014, no pet.). Additionally, because the Decree also contains a property division, and does little else than divide the parties' community estate (as the parties did not have any children), an agreed property division is also treated as a contract. An agreed property division, although incorporated into a final divorce decree, is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts. Beshears, 423 S.W.3d at 500 (citing Allen v. Allen, 717 S.W.2d 311, 313 (Tex.1986)). Thus, this Court may rely upon traditional contract principals in

order to address the underlying issues raised by Ms. Howard with regards to ambiguity and interpretation.

Because the parties did not appeal the November 28, 1988 Decree, the trial court may not alter or change the substantive division of property as expressed in the Decree. Texas law is clear that a court that rendered a divorce decree generally retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. TEX. FAM. CODE ANN. §§ 9.002, 9.008. Specifically, the court has continuing jurisdiction to "render further orders to enforce the division of property made in the decree of divorce ... to assist in the implementation of or to clarify the prior order." TEX. FAM. CODE ANN. § 9.006(a). Likewise, "[o]n a finding ... that the original form of the division of property is not specific enough to be enforceable by contempt," the court has continuing jurisdiction to "render a clarifying order setting forth specific terms to enforce compliance with an original division of property." TEX. FAM. CODE ANN. § 9.008(b).

However, there are limitations on the enforcement and clarification powers of the court that rendered the divorce decree. For example, "[t]he court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered

or changed." TEX. FAM. CODE ANN. § 9.006(b). More specifically, the Family Code provides:

> (a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.
>
> (b) An order under this section that amends, modifies, alters or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

TEX. FAM. CODE ANN. § 9.007(a)-(b); *see* Shanks, 110 S.W.3d 444, 449.

Thus, the court that rendered the divorce decree (or any other final order dividing property) also retains continuing, exclusive jurisdiction to render an enforceable QDRO (or similar order) "permitting payment of pension, retirement plan, or other employee benefits divisible ... to an alternate payee or other lawful payee." TEX. FAM. CODE. ANN. § 9.101(a). A party may petition the court for a QDRO in two circumstances: (1) the court has not previously issued a QDRO or similar order permitting payment of benefits from a pension, retirement, or other employee-benefits plan or (2) the plan administrator (or person acting in equivalent capacity) has determined that a previously entered QDRO does not satisfy the requirements for a QDRO. Id. §§ 9.103, 9.104.

Here, both the parties petitioned the trial court for a QDRO because the court did not previously issue a QDRO. The trial court retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. The trial court lacks jurisdiction to change the underlying property division. The trial court is also without authority to enter a QDRO altering the terms of the decree by increasing Ms. Howard's interest to more than what was awarded under the divorce decree.

With these principals in mind, we first turn to the issue of ambiguity.

### a. AMBIGUITY

Fourteenth Court of Appeals in <u>Gibson</u> noted that Texas Supreme Court in <u>Universal C. I. T. Credit Corp. v. Daniel</u>, 150 Tex. 513, 243 S.W.2d 154 (1951), "contains an extended analysis of the law regarding ambiguity of contracts." <u>Gibson v. Bentley</u>, 605 S.W.2d 337, 339 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.)  In <u>Universal</u>, and its progeny, including <u>Coker v. Coker</u>, 650 S.W.2d 391, 393-94 (Tex. 1983) which is often cited in this context, the Texas Supreme Court held that a contract is ambiguous if its meaning is uncertain or it is reasonably susceptible to more than one interpretation. <u>Id</u>. at 393. When a contract is susceptible to a legal meaning, as defined above, the construction of the written instrument is one of law for the court.  <u>Id</u>. at 394.  An unambiguous writing is presumed to contain the

whole of the agreement between the parties, and contemporaneous parol evidence is not admissible to contradict or vary the terms of the written instrument. Id. If a written contract is so worded that it can be given a definite and certain legal meaning, parol evidence is not admissible to render it ambiguous. Id; *see also* Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam); May v. Buck, 375 S.W.3d 568, 579 (Tex. App.—Dallas 2012, no pet.) (court can conclude contract is ambiguous even in absence of such a pleading by either party); Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc., 56 S.W.3d 313, 322-323 (Tex. App.— Houston [1st Dist.] 2001, pet. denied) (whether a term on its face is subject to two or more interpretations is an argument of patent ambiguity).

Texas law is clear that a contract is not ambiguous merely because of a simple lack of clarity, or because the parties proffer conflicting interpretations of a term. DeWitt County Electric Cooperative, Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). Here, Ms. Howard relies heavily upon alleged conflicting testimony between the trial witnesses to show that the Decree is susceptible to two different interpretations. Ms. Howard states "two experts read the same paragraph two different ways." (Appellant's Br. 31.) The law is clear, however, that testimony from two witnesses, even experts, offering

two different interpretations, does not make the Decree ambiguous.[9] The Court should reject Ms. Howard's arguments to the contrary.

Additionally, the intent of the parties is to be ascertained from the entire instrument, harmonizing and giving effect to all provisions of the contract so that none will be rendered meaningless. Shanks, 110 S.W.3d at 447; Toler v. Sanders, 371 S.W.3d 477, 480 (Tex. App.-Houston [1st Dist.] 2012, no pet). If, read as a whole, the divorce decree's terms are unambiguous, we must give effect to the order in light of the literal language used. Coker, 650 S.W.2d at 393; In re C.P.Y., 364 S.W.3d 411, 413 (Tex. App.—Dallas 2012, no pet.). Here, Ms. Howard his taken a small portion of the Decree out of context and has not read it in context of the entire instrument.

Before discussing this issue any further, it becomes important to clarify the alleged ambiguity as raised by Ms. Howard in her brief. According to Ms. Howard, the alleged ambiguity involves whether the Decree limits Ms. Howard's share of the retirement benefits to the benefits existing at the time of divorce or at the time of retirement. If the Decree expands Ms. Howard's award to the share of the retirement benefits at the time of retirement, then

---

[9] *See generally* Bryan A. Garner, Garner's Dictionary of Modern Legal Usage 50 (3rd ed. 2011) (explaining the difference between ambiguity in its broadest sense and as used by courts.)

Ms. Howard would be entitled to "all of the benefits even those that did not exist at the time of the divorce." (Appellant's Br. 10.) If the Decree limits Ms. Howard's share to the time of divorce, then Ms. Howard would only be entitled to the benefits that existed at the time of the divorce. Thus, either the Decree is clear how the retirement benefits should be valued or it is not. If the Decree is clear, then it is unambiguous. This is a question of law that is reviewed *de novo* by this Court. MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999). If the Decree is ambiguous, then the trial court is required to determine its meaning, based upon the law regarding the construction of contracts. This is a fact question which is reviewed for abuse of discretion. Gibson, 605 S.W.2d at 339.

The cases relied upon by Ms. Howard support her contention that the HPOPS pension benefits should be evaluated at the time of retirement. Those cases are: Gainous v. Gainous, 219 S.W.3d 97 (Tex.App.—Houston [1st Dist.] 2006, pet. denied) and Shanks v. Treadway, 110 S.W.3d 444 (Tex. 2003) and each will be discussed below. Gainous and Shanks held, in light of the language contained in the decree at issue in each case, that the benefits were valued at the time of retirement. Although, Ms. Howard also relies heavily upon Stavinoha v. Stavinoha, 126 S.W. 3d 604 (Tex. App.—Houston [14th Dist] 2004), Stavinoha is not applicable to this case, because Stavinoha did

not involve questions related to the ambiguity and interpretation of a divorce decree.[10]  Stavinoha involved questions relating to trial court's ability to divide HPOPS pension benefits at a contested final trial setting. Id. at 606. Stavinoha did not address questions relating to ambiguity, as reflected in a divorce decree previously ordered.  Thus, Stavinoha is not applicable to the facts of the instant case.  *See also* Cearley v. Cearley, 544 S.W.2d 661 (1976) (holding that non-vested contingent retirement benefits may be apportioned by the court).[11]  Fundamentally, the fact that non-vested contingent retirement benefits may be apportioned by the court is not dispositive as to how the November 28, 1988 Decree actually divided those assets.

Mr. Howard first examines Shanks v. Treadway, 110 S.W.3d 444 (Tex. 2003), in Shanks, husband requested the trial court to sign a Qualified Domestic Relations Order ("QDRO") based upon language allegedly contained in a divorce decree calculating the wife's percentage of pension benefits

---

[10] Ms. Howard's expert, Mr. Johnston, testifies that Stavinoha did not involve the interpretation of a decree.  (3 R.R. at 70, ll. 6 – 8.

[11] In another point of contrast between this case and Stavinoha, the Fourteenth Court of Appeals clearly found that "Paul was fully vested in the plan in 1995 after he completed twenty years of service." Stavinoha, 126 S.W. 3d at 610.  The parties were divorced on June 21, 2002. Id.  Because all of the disputed benefits were earned during the marriage, and none were earned post-divorce, the Court held that Maureen was entitled to a portion of the DROP benefits.  Here, the facts show that Mr. Howard entered DROP on December 12, 1998, well after the parties were divorced on November 28, 1988.  (2 R.R. at 41, *ll.* 9 – 11.)  Mr. Howard received the first DROP credit on December 31, 1998.  (2 R.R. at 42, *ll.* 2 – 5.)  Although Mr. Howard's right to receive a return of contributions was vested to him on November 28, 1988, Mr. Howard was not fully vested in the plan because he had not obtained twenty years of service, in direct contrast to Stavinoha. The DROP benefits at issue in this case were not earned during the marriage and were earned post-divorce.

valued at the date of divorce. Shanks, 110 S.W.3d at 445. The decree identified the husband's pension plan as "arising out of past employment," but then stated that the wife was entitled to "a 'pro rata interest' ... of any and all sums received or paid to [husband] from such pension plan...." The decree also defined "pro rata interest" as "25% of the total sum or sums paid or to be paid to [husband] from such pension or retirement plan." Id. at 447. In light of this language, the trial court signed the QDRO based upon the benefits valued on the date of divorce.   The Dallas Court of Appeals reversed, holding the decree unambiguously awarded the non-employee spouse a percentage of the total amount of benefits on the date of retirement. Id. at 445. The Texas Supreme Court affirmed the Dallas Court of Appeals. Id. at 449.   Although the decree conflicted with the Texas Supreme Court's then-applicable opinion in Taggart v. Taggart, 552 S.W.2d 422 (Tex. 1977), which provided the formula to be used in determining the community interest in retirement benefits and the non-employee spouse's share of that interest, the Texas Supreme Court held this error of law did not change the plain language of the decree:

> Notwithstanding the state of the law at the time the divorce decree was entered, this case does not involve a direct appeal, and we must interpret the decree to determine not what the trial court should have done but, if possible, what the court actually did.... Whether intentional or not, the court that entered the decree failed to limit the community interest pursuant to the

> Taggart apportionment fraction and instead clearly gave [the non-employee spouse] a twenty-five percent interest in the total amount (whatever that might be) to be paid to [the employee spouse] under the plan....

Shanks, 110 S.W.3d at 447 – 449.

Likewise in Gainous, the divorce decree awarded the wife "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." Gainous v. Gainous, 219 S.W.3d 97, 108 (2006). The Texas Supreme Court held that this language unambiguously awarded the wife half of all of the husband's benefits in the Fund. "That is, the divorce decree's award to Brenda of Thomas's Fund benefits necessarily— albeit improperly— included some of Thomas's separate-property benefits in the Fund, i.e., half of his separate-property, post-divorce benefits attributable to his continued employment." Id. at 109.

Here, Ms. Howard claims that "[h]ere like in Gainous there is no limiting language which excludes any specific benefits or limits the award to just the vested portion of the service pension which existed on the date of divorce." (Appellant's Br. 10.) Ms. Howard further claims that, in comparing the language of the decree in Shanks, "[h]ere again is similar language, granting Mrs. Howard one half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan…existing by reason of Appellant's employment during the marriage." (Appellant's Br. 12.)

Ms. Howard's argument fails because the language contained in the Decree at issue in this case is very different from the language reflected in the decrees analyzed under both Gainous and Shanks. Fundamentally, the Decree does limit Ms. Howard to the benefits existing at the time of divorce. The Decree contains, in Ms. Howard's words, "limiting language,"[12] showing that Ms. Howard's benefits are limited to what existed on the date of divorce. The "limiting language" will be discussed below.

### i. THE DECREE'S RECITALS

The Decree's recitals contain "limiting language."

Contracts often contain recitals that set forth details placing the contract in context by defining the objectives sought to be obtained by the parties. Recitals are useful in construing the contract and determining the parties' intent. All Metals Fabricating, Inc. v. Ramer Concrete, Inc., 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009, no pet.). This is true because language cannot be read in isolation and every part of a contract must be reviewed. In order to determine the parties' intent, the entire instrument

___

[12] The term "limiting language" was likely a term utilized by Ms. Howard's expert, Mr. Rick Johnston, Sr. Mr. Johnston states, "Since there is no *limiting language* [in Gainous case] that limits the benefits under the fire department to the term of marriage or to community property or as of a particular date, then that language was broad enough to include all of the benefits, even those that would arguably have been his separate property." (3 R.R. at 87, *ll*. 19 – 25). Mr. Johnston testifies that "[w]e have similar language here," indicating that the language of the Decree in this case is similar to the language in Gainous. (3 R.R. at 88, *ll*. 2.)

must be considered so that no provision will be rendered meaningless. Burlington N. & Santa Fe Ry. Co. v. S. Plains Switching, Ltd., 174 S.W.3d 348, 356 (Tex. App.—Fort Worth 2005, no pet.).

Here, the Decree contains a series of recitals that identifies the parties' intent to divide only the "estate of the parties." In Pearson, the Texas Supreme Court noted that the phase "estate of the parties" used in a divorce decree refers only to the community property of the parties, as the trial court has no authority to divide separate property or divest a party of their separate property rights. Pearson v. Fillingim, 332 S.W. 3d 361, 364 (Tex. 2011) (citing Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 139 (Tex. 1977). Likewise, the trial court may not divest title to the separate property of a spouse. Vickery v. Vickery, 999 S.W.2d 342, 371 (Tex. 1999); Cameron v. Cameron, 641 S.W. 2d 210, 213-20 (Tex. 1982). When a court mischaracterizes separate property as community property, the error requires reversal because a spouse is divested of separate property. Eggemeyer, 554 S.W.2d at 140; Leighton v. Leighton, 921 S.W.2d 365 (Tex. App.—Houston [1st Dist.] 1996, no writ).

In Beshears, the Dallas Court of Appeals applied Pearson, and found that the district court did not err in finding ex-wife was only entitled to 57.5% of the ex-husband's retirement benefits on the date of divorce. Beshears, 423

S.W.3d at 501. The ex-husband argued that the retirement benefits should be valued on the date of divorce. Id. The ex-wife argued that the retirement benefits should be valued on the date of retirement and, like the instant case, "includ[ed] sums accumulated in the retirement account post-divorce." Id. The divorce decree awarded ex-wife "57.5% of all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to" ex-husband's retirement plan. Id. In light of the axiom that "language awarding the benefit in the retirement plan to [ex-wife] cannot be read in isolation," the Dallas Court of Appeals held the decree, when read as a whole, unambiguously divided only the community estate and did not award ex-wife any of ex-husband's post-divorce separate property accumulated in the retirement account. Id. at 501-502 (citing Coker, 650 S.W.2d at 393). The Court noted:

> Paragraph twelve of the decree, which dealt with the property division, is entitled "Division of Marital Estate." The decree provides that Judith and Donald reached an agreement as to the proposed division of the "marital estate." The trial court also stated in the decree it was dividing the "marital estate." With regard to property, other than the retirement account, divided in paragraph twelve of the decree, the trial court stated it was dividing property "accumulated by either party during the marriage relationship" and that had "accrued during the marriage." The decree also stated the trial court was dividing the parties' debts "as a part of the division of the estate of the parties."

<u>Id</u>. at 501.  In so doing, the Court rejected the ex-wife's reliance upon <u>Shanks</u>

and <u>Reiss</u>[13] and noted:

> Relying on the Texas supreme court's opinions in <u>Shanks</u> and <u>Reiss</u> and the Tyler court of appeals's opinion in <u>McCaig</u>, Judith argues the divorce decree unambiguously awarded her 57.5% of the entire retirement benefit at the time of Donald's retirement. However, <u>Shanks</u> and <u>McCaig</u> interpreted only a provision in the divorce decree under consideration that divided the retirement benefit. *See* <u>Shanks</u>, 110 S.W.3d at 445; <u>McCaig</u>, 2007 WL 1765845, at *1. Neither opinion indicates the decree under consideration included the words "marital estate," "estate of the parties," or "community property" or that, in construing the applicable decree in its entirety, there was any other provision impacting the division of the retirement benefit. In <u>Reiss</u>, the supreme court addressed a provision of the decree dividing "community property." <u>Reiss</u>, 118 S.W.3d at 440. However, the term "community property" was not used in the provision dividing the retirement benefit, and that provision divided the benefit "if and when" it was received by the husband. <u>Id</u>. A divided court determined that, while the provision may have impermissibly classified separate property as community property, it awarded the wife a percentage of the retirement benefit as of the time of the husband's retirement. <u>Id</u>. at 441–42. The divorce decree is this case does not divide the retirement benefit "if and when received" by Donald. Rather, in a section of the decree dealing only with the division of the marital estate, it awarded Judith 57.5% of the retirement benefit. Reading the decree as a whole, we cannot conclude it divided Donald's separate property by awarding Judith 57.5% of the entire retirement benefit as of the time of Donald's retirement. *See* <u>Pearson</u>, 332 S.W.3d at 363.

---

[13] The reasoning applied by the Dallas Court of Appeals in <u>Beshears</u> is also applicable to <u>Gainous</u>. Mr. Rick Mumey, Mr. Howard's expert, was trial counsel for Thomas Gainous.  Mr. Mumey testified, "The Decree language was rather brief and harsh. It said that both parties were awarded 50 percent of the plan standing in the name of Thomas Gainous period, without reference to dates or past, present or future. It was very brief, and the consequence was harsh." (2 R.R. at 25 – 26.)

Beshears, 423 S.W.3d 493, 502 n. 4.

Here, the Decree contains the following recitals

1. "The Court finds that Petitioner and Respondent have entered into an agreement for the *division of their estate...*" (5 R.R. at 98, emphasis added.)

2. "IT IS ORDERED, ADJUDGED, and that the *estate of the parties* is divided as follows...*" (5 R.R. at 98, emphasis added.)

3. "WINNIE J. HOWARD, is awarded the following as *her sole and separate property*, and Petitioner is *divested of all right, title, interest and claim in and to such property:*" (5 R.R. at 98, emphasis added.)

4. "STEPHEN H. HOWARD is awarded the following as *his sole and separate property*, and Respondent is *divested of all right, title, interest and claim in to such property:*" (5 R.R. at 100, emphasis added.)

The Decree provides that Mr. and Ms. Howard reached an agreement as to the proposed division of the "estate of the parties." (5 R.R. at 98.) The trial court also stated in the Decree that the parties "entered into an agreement for the *division of their estate.*" (5 R.R. at 98, emphasis added.) The decree also stated the trial court was dividing the parties' debts "as part of the division of the *estate of the parties.*" (5 R.R. at 99.) Thus, because the recitals repeatedly reference the "division of their estate," the "estate of the parties," and property acquired during the marriage, the parties intended to divide only the community estate on the date of divorce.

In addition to the above, a slight difference exists between the one-half of the pension plan awarded to Ms. Howard and the one-half pension plan awarded to Mr. Howard. Mr. Howard's portion of the award refers to "existing by reason of Petitioner's *past or present* employment during the marriage" while Ms. Howard's portion states, "exiting by reason of Petitioner's employment during the marriage." (5 R.R. at 99); (5 R. R. at 100) (emphasis added). Because the Decree specifically refers to Mr. Howard's "past or present employment," but neglects to mention "future employment," this shows that the parties only intended to divide pension benefits as they existed on the date of divorce. (5 R. R. at 100). Any growth in Mr. Howard's HPOPS pension and retirement benefits attributable to his future employment, including the DROP funds at issue, are not community property subject to division by the Court and are Mr. Howard's separate property.

Thus, in accordance with <u>Beshears</u> and <u>Pearson,</u> and in light of the literal language used, the Decree, when read as a whole, unambiguously divided only the community estate and did not award Ms. Howard any of Mr. Howard's post-divorce separate property accumulated in the HPOPS pension account.

## ii. THE PLAIN MEANING OF "VESTED"

The Decree specifically refers to "vested" in dividing the retirement plans. The term "vested" is additional "limiting language."

Texas law provides that language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. Fox v. Thoreson, 398 S.W.2d 88, 92 (Tex. 1966); General American Indemnity Co. v. Pepper, 339 S.W.2d 660, 661 (Tex. 1960); Epps v. Fowler, 351 S.W.3d 862, 866 (Tex. 2011); Language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985). To ascertain the natural meaning of a common-usage term, courts often consult dictionaries. Epps 351 S.W.3d at 866.

Here, since the definition of the term "vested" can be given ordinary grammatical definition, no ambiguity exists. Mr. Howard's expert, Mr. Mumey testified that the term "vested," under Black's Law Dictionary, means "benefit under the plan that cannot be changed by some contingent event

later." (2 R.R. at 30.); Black's Law Dictionary 1595 (8th ed. 2004).[14] The facts, accepted by the trial court as correct, clearly show that paragraph 3 of the award of benefits to Ms. Howard confines the vested pension benefits during the marriage. (2 R.R. at 48, *ll*. 18 – 23.)

As additional support, Mr. Howard also directs this Court's attention to the inception of title doctrine. Inception of title occurs "when a party first has a right of claim to the property by virtue of which title is finally *vested*." Wierzchula v. Wierzchula, 623S.W.2d 730, 731-32 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) (emphasis added). Although the purpose of the inception of title doctrine is to delineate between separate and community property and is not technically applicable to the facts of the instant case, it is useful in this context to understand the definition of the term "vested." Thus, if the inception of title doctrine was applied to this case, it should show that on the date of divorce, Mr. Howard only had a right to claim in only one HPOPS pension benefits – a return of contributions.

In Cearley v. Cearley, 544 S.W.2d 661 (1976), the Texas Supreme Court overturned the judgment of the Austin Court of Appeals under the "now well established that matured private retirement, annuity, and pension benefits

---

[14] Mr. Mumey further testified, "In this case [the term "vested" is] relevant because he had an absolute right to get a refund of contributions on the date of divorce and all the other subsequent benefits, many of which that didn't exist at the time." (2 R.R. at 53, *ll*. 9 – 13.)

earned by either spouse during the marital relationship are part of the community estate and thus subject to division upon dissolution of the marriage." Id. at 662. In so doing, the Texas Supreme Court noted that the Austin Court of Appeals "held that the trial court was without authority to order division of the husband's prospective military retirement benefits because *no vested* interest had been acquired therein at the time of the judgment." Id. (emphasis added). In overturning the Austin Court of Appeals, the Texas Supreme Court essentially held that a trial court may divide unvested contingent retirement benefits. The Stavonha case is more recent case that applies these same principals.

Although the term "vested" was not material to the Court's analysis in Cearley, it is material in this case and the Texas Supreme Court was careful to make a distinction between the two. Unlike decrees that refer to "vested," "unvested," or "accrued," "unaccrued" retirement benefits, the parties in the present case only utilized the term "vested." Ms. Howard proposes to read into the Decree these additional terms that are not present.

### iii. "VESTED" MODIFIES "PENSION PLAN"

"Vested" modifies "pension plan." This is additional limiting language.

Ms. Howard argues that the term "'vested' does not modify the entire paragraph it only modifies profit sharing plans, the proper modifier is 'any.'"

(Appellant's Br. 17.) Ms. Howard does not cite any authority to this assertion and, in fact, the Texas Supreme Court disagrees with Ms. Howard.

In Iliff v. Iliff, 339 S.W.3d 74, 80 (Tex. 2011), the Texas Supreme Court resolved a question of statutory construction regarding whether the term "intentional" modified the entire phase "unemployment or underemployment." The Court held that it does relying upon Lewis v. Jackson Energy Coop. Corp., 189 S.W.3d 87 (Ky. 2005). Lewis holds that that the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears. Id. at 92.

Here, the Decree states:

> 3.     *One half of any and all sums related to any vested profit sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan or accrued unpaid bonuses, or other benefits programs existing by reason of Petitioner's employment during the marriage.*

(5 R.R. at 97 – 104.) "Vested" is the first adjective following in a series of nouns, including "profit sharing plan," "retirement plan," and "pension plan." (5 R.R. at 97 – 104.) Because "vested" is the first adjective, and another adjective does not appear between "vested" and "pension plan", "vested" modifies "profit sharing plan," "retirement plan," and "pension plan."

This further evidences a clear and unambiguous intent of the parties to divide only the retirement benefits that were "vested" to the parties on the

date of divorce. Mr. Olinger and Mr. Mumey testified that the Mr. Howard only had a vested interest in a refund of contributions. (2 R.R. at 34, *ll.* 15 – 16.) Thus, Ms. Howard would be entitled to half of the refund of contributions, or half of 20,765, which "was the amount that was vested in his retirement plan or pension plan [with HPOPS] on the date of divorce." (2 R.R. at 35, *ll.* 4 – 6).

### iv. "EXISTING BY REASON OF PETITIONER'S EMPLOYMENT DURING THE MARRIAGE"

The phase "existing by reason of Petitioner's employment during the marriage" is additional limiting language. Mr. Mumey testified that this phase "confines the award and thus the vested benefits to those earned during the marriage." (2 R.R. at 3 – 9.)

### b. INTERPRETATION

If the Court finds that Decree is ambiguous, then the Court shall next consider whether the trial court's interpretation of the Decree is supported by the record.

When a contract is ambiguous, its interpretation is a question of fact for the trial judge, aided by extrinsic evidence, if necessary. Coker, 650 S.W.2d at 393-94. As the fact finder, the trial judge determines the weight to be given any testimony and resolves conflicts in the evidence. Chavez v.

<u>Chavez</u>, 148 S.W.3d 449, 457 (Tex.App.—El Paso 2004, no pet.). When the trial court makes specific findings of fact, and a statement of facts is filed, the trial court's fact findings will be sustained as legally sufficient if there is any probative evidence in the record to support them. <u>Chavez</u>, 148 S.W.3d at 457. The trial court's fact findings should be sustained on factual sufficiency grounds unless they are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. <u>Id</u>.

Here, although no findings of fact were requested by Ms. Howard, factual findings were contained in the judgment itself. (1 C.R. at 23 - 24.) Because those findings do not conflict with findings in a separate document, those findings of fact should be accorded probative value. *See* <u>Gonzalez v. Razi</u>, 338 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (*quoting* <u>In re Sigmar</u>, 270 S.W.3d 289, 295 n.2 (Tex. App.—Waco 2008, orig. proceeding) ("[F]indings of fact recited in an order or judgment will be accorded probative value so long as they are not in conflict with findings recited in a separate document."); <u>In re C.A.B.</u>, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[t]he mere inclusion of findings in a judgment does not mean the findings have no effect" and "findings improperly included in a judgment still have probative value and are valid as findings"); <u>Hill v. Hill</u>, 971 S.W.2d 153, 157 (Tex. App.—Amarillo 1998, no

pet.) (recognizing that "findings contained in a judgment (contrary to Rule 299a) are not shorn of all authority" but "only to the extent they conflict" with findings made in a separate document).

Here, the trial court's findings, as contained in the final judgment, are supported by probative evidence in the record. Mr. Howard incorporates by reference all arguments discussed and outlined above. Additionally, the trial court's findings are not contrary to the overwhelming weight of the evidence as to be manifestly wrong. In support of Ms. Howard's interpretation of the Decree, she advanced testimony heard by the trial court regarding the lack of punctuation. (Appellant's Br. 18.) This evidence was presented by Ms. Brathwaite, counsel for Ms. Howard. The trial court did not abuse its discretion in rightfully disregarding this testimony.

With regards to interpretation, Mr. Howard also advances two additional arguments.

First, a contract is legally binding only if the terms are sufficiently definite to allow a court to understand the parties' obligations. Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000); Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C., 284 S.W.3d 416 (Tex. App.— Austin 2009). When an agreement leaves material matters open for future adjustment and agreement, it is not binding upon the parties and merely

constitutes an agreement to agree. Id. Here, the parties clearly intended the Decree to be legally binding, as evidenced by the fact that they submitted the Decree for signature by the trial court in 1988, the trial court did sign the Decree, and no party appealed. (5 R.R. at 97.) As the Court should be well aware, the plain language of the Decree did not include any calculations.[15] The Decree simply divided the HPOPS pension benefits by giving one-half to each party. (5 R.R. at 99.); (5 R.R. at 100.) Later, at the final trial of this case, Ms. Howard advanced extensive and complicated calculations,[16] as extrinsic evidence, in support of her requested division of the HPOPS pension benefits on the date of retirement. (5 R.R. at 84 – 96.)[17] Mr. Howard did not submit any calculations. He submitted testimony from the HPOPS benefits director, Mr. Clark Olinger, to show the balance of Mr. Howards' account on

---

[15] Possible calculations would have included the now familiar formulas in Berry v. Berry, 647 S.W. 2d 945, 946-47 (Tex. 1983) or Taggart v. Taggart, 552 S.W.2d 422, 424 (Tex. 1977).

[16] The calculations provided by Mr. Johnston state that Mr. Howard earned 10.76 years of credited pension service – including "2 years, 3 months and 6 days of participation in the Houston Firefighters Relied and Retirement Fund. (3 R.R. at 62.); (5 R.R. at 59). However, Mr. Johnston testified that Mr. Howard only had 8.5 years of credited person service and the 10.76 years had to be changed to 8.5 years. (3 R.R. at 91 – 92). Mr. Johnson notes that as a result of this change the calculations "are not any good." (3 R.R. at 92, ll. 6 – 9).

[17] The calculations are 13 pages long and appear to apply a Taggart apportionment formula. As indicated by Ms. Howard, she hired the same expert in Stavinoha. In Stavinoha, the Fourteenth Court of appeals indicated that the Taggart apportionment formula, as opposed to the Berry formula, was applicable to the facts of Stavinoha. Stavinoha, 126 S.W.3d at 616 – 617. Here, however, because the DROP benefits at issue in this case were not earned during the marriage and were earned post-divorce, the Taggart apportionment formula is not applicable, as per the holding of Stavinoha.

the date of divorce. (2 R.R. at 11, *ll*. 10 – 17.)  Thus, an important question arises.  Did the parties intend, in 1988, that future division of the HPOPS pension benefits would require extrinsic evidence in the form of calculations to determine which portion of those benefits should be awarded to Ms. Howard when Mr. Howard retired?  Or, in light of the literal language used in the Decree, Did each party only intend to give each party one-half of the HPOPS pension benefits vested on the date of divorce?   Obviously, Mr. Howard argues that the latter should control.  The legally binding nature of the Decree itself shows that parties did not contemplate extrinsic evidence (in the form of calculations) to divide the HPOPS pension benefits.  To do so otherwise, would destroy the legally binding nature of the Decree itself and render it nothing more than an agreement to agree that division of the HPOPS pension benefits would require extensive calculations if and when Mr. Howard retired.

Second, any ambiguity found in the Decree, especially with regards to a lack of punctuation, should be construed against the drafter. The doctrine of *contra proferentem*  is a device of last resort employed by courts when construing ambiguous contractual provisions. AT & T Corp. v. Rylander, 2 S.W.3d 546, 560 (Tex.App.-Austin 1999, pet. denied); GTE Mobilenet Ltd. P'ship. v. Telcell Cellular, 955 S.W.2d 286, 291 (Tex.App.-Houston [1st Dist.]

1997, writ denied); <u>Smith v. Davis</u>, 453 S.W.2d 340, 344-45 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.) (declining to apply doctrine in face of contractual ambiguity). Here, although testimony at trial indicated that the drafter of the Decree was Mr. Howard's attorney, Ms. Howard's attorney, Janette Brathwaite, was also in a position to correct any lacking punctuation, but did not do so, thus failing to protect her own client's interests. (2 R.R. at 51, *ll.* 23 – 25.); (2 R.R. at 52, *ll.* 1 – 5.)[18]  Therefore, if Ms. Braithwaite recognized an ambiguity in the Decree, she would have been in the position to correct it back in 1988.  Because she did not, the Decree should be construed against Ms. Howard.

---

[18] Ms. Brathwaite offers no explanation why she did not confer with Mr. Howard's attorney regarding the punctuation.  Ms. Brathwaite claims that the punctuation error is "not significantly enough unambiguous to have made that an issue." (3 R.R. at 52, ll. 8-9.)  But, also states, "it's clear that "vested' does not modify an entire string of concepts in this Decree." (3 R.R. at 52, ll. 10-13.) Ms. Brathwaite also claims that the decree as currently written is clear, which directly conflicts with the position taken by Ms. Howard in her brief.  (3 R.R. at 53, ll. 20 – 22.)

## 2. ISSUE 3 AND 4: APPELLANT COUNSEL'S LATE ARRIVAL TO TRIAL

ISSUE THREE: Did the trial court err in starting trial prior to the arrival of Appellant's counsel when Appellant's counsel was in trial in the protective order court?

ISSUE FOUR: Did the trial court err in proceeding to trial as a default when Appellant was present though her counsel was not present?

On October 21, 2013, trial in this case was *preferentially* set for January 27, 2014 at 10:00 a.m. Counsel for the Mr. Howard, Mr. Poerschke, timely appeared and announced ready for trial. (1 C.R. at 69).[19] Counsel for Ms. Howard, Ms. Bastine-Robinson, did not make an appearance, although Petitioner herself was present. (1 C.R. at 70). Mr. Poerschke instructed Ms. Howard to communicate with Ms. Bastine-Robinson in an attempt to locate her. Id. No response was received from Ms. Bastine-Robinson (within Mr. Poerschke' knowledge), and after waiting for over an hour the Court called this case to trial. Id. Eventually, Ms. Bastine-Robinson appeared after the

---

[19] Although this evidence is contained in Mr. Howard's response to Ms. Howard's Motion for New Trial, Mr. Howard's Motion for New Trial was verified. Mr. Poerschke additionally testified to these facts at Ms. Howard's hearing on her Motion for New Trial. (

Court heard testimony from Mr. Olinger, the HPOPS pension representative. Id.

Ms. Bastine-Robinson did not notify Mr. Poerschke of the conflict in her schedule prior to or on the day of trial. Id. Nor did Ms. Bastine-Robinson file a protective order, or request a motion for continuance, nor did she object to the Court's decision to begin the presentation of evidence in her absence, or seek a mistrial. Id. Ms. Bastine-Robinson made no formal objection to the Court.[20] Id. Ms. Bastine-Robinson utterly failed to preserve error. A party cannot lead a trial court into error and then later complain about it on appeal. Garcia v. Bexar County, 2012 Tex. App. LEXIS 3633 (Tex. App.— San Antonio May 9, 2012, pet. denied) (mem); *see also* TEX. R. APP. P. 33(a) (the record must show the complaint was made to the trial court in a timely request, objection, or motion).[21]

Additionally, because Ms. Bastine-Robinson indicated that she wanted to cross-examine Mr. Olinger during a short recess on January 27, 2014, Mr. Poerschke called Mr. Olinger on that date and requested him to return to

[20] The trial court states, "All right. Let the record reflect that now at 11:30 Ms. Robinson has appeared." (2 R.R. at 22, ll. 22 – 24.) After reviewing the record from this point forward, Ms. Robinson does not make any objection relating to issue three or four.

[21] "[A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Court to testify. (1 C.R. at 70). Because trial was later recessed until January 30, 2014, Mr. Olinger later appeared on January 30, 2014, but was not called by Ms. Bastine-Robinson to testify. (1 C.R. at 71). Additionally, because Mr. Olinger was originally called to testify on January 27, 2014 by Mr. Howard about HPOPS vesting periods, Mr. Olinger's testimony was also duplicative of testimony provided by Mr. Mumey and known to Ms. Bastine-Robinson through discovery and in the business records filed with the Court on November 19, 2013. Id. Ms. Bastine-Robinson cannot show how she was harmed by not being able to cross examine Mr. Olinger on January 27, 2014.

Additionally, Ms. Bastine-Robinson's reliance upon the Rule 10 Texas Regional Rules of Administration promulgated by Second Administrative Judicial Region of Texas to excuse her late appearance on January 27, 2014 is without merit. Rule 10 sets forth the priorities of conflicting trial settings within different counties located within the Second Administrative Judicial Region. However, because the alleged conflicting setting was between this Court and the another Court (280th) within Harris County (intra-country), Rule 10 of the Texas Regional Rules of Administration does not apply. Rule 10.1 of the Local Rules of the Harris County District Courts clearly states:

> The Rules of the Second Administrative Judicial Region control conflicts in settings of all kinds between a Harris County court and a court not in Harris County.

Rule 10.1, Local Rules of the Harris County District Courts. Instead, if the setting in the 280th Judicial District Court was an actual trial (and there is no evidence that it was a trial other than Ms. Bastine-Robinson's assertion that it was),[22] then the setting set first in time will have priority. *See* Rule 10.2(b).[23] Here, this case was preferentially set for trial on October 21, 2013. If the case in the 280th was set prior to October 21, 2013, then Ms. Bastine-Robinson should have filed a motion for continuance due to the conflict previously known to her. If the case in the 280th was set after October 21, 2013, then this case had priority. Either way, she had no justification or excuse for failing to appear timely or take some action to rectify the alleged setting conflict.

With regards to issue four, there is no indication in the record that the trial court called this case to trial on a default basis.

Thus, in light of all the above, issues three and four are not a valid ground for reversal.

----

[22] If the setting in the 280th was not a trial, then the trial setting in this case will take precedence. *See* Rule 10.2(a).

[23] Ms. Bastine-Robinson states, "[i]n Appellant's scenario, the quasi criminal protective order case was not set at the same time, but was not scheduled to start at the same time thus the Court with precedence, that being the 280th had the option to yield and declined to do so." (Appellant's Br. 21.) This statement does not indicate that the trial in the 280th was set before trial in this case nor was the trial in the 280th was preferentially set.

### 3. ISSUE 5: DENIAL OF MOTION FOR NEW TRIAL

ISSUE FIVE: Did the trial court err in failing of grant Appellant a New Trial?

This Court shall review a trial court's ruling on a motion for new trial for an abuse of discretion. In re United Scaffolding, Inc., 377 S.W.3d 685, 687 (Tex. 2012) (orig. proceeding). A new trial may be granted upon a showing of good cause. TEX. R. CIV. P. 320; In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P., 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding). Although the Texas Rules of Civil Procedure do not define "good cause," courts have interpreted the term to mean not "just any cause." In re Columbia Med. Ctr. of Las Colinas, 290 S.W.3d 204, 210 n.3 (Tex. 2009). For example, mistakes made by a party or his attorney in trial strategy do not constitute good cause for the granting of a new trial. Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970). Similarly, an appellant's failure to fully develop or use available evidence does not constitute good cause. *See* White v. Wah, 789 S.W.2d 312, 320 (Tex. App.—Houston [1st Dist.] 1990, no writ).

The trial court enjoys great latitude when dividing the estate of the parties. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). Because the trial court enjoys the presumption of propriety, any party opposing the partition bears a heavy burden of proof. Id. at 699; Wilson v. Wilson, 44 S.W.3d 597,

600 (Tex. App.— Fort Worth 2001, no pet.). A property division should only be disturbed on appeal when an appellant can prove an abuse of discretion. Wilson, 44 S.W.3d at 600. While legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion, they are not independent grounds of error. Zeptner v. Zeptner, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g).

Here, to the extent that Ms. Howard argues that the trial court abused its discretion in finding the Decree unambiguous, those issues are addressed in this brief under issue one and two. Mr. Howard notes that issues regarding ambiguity are not reviewed under the abuse of discretion standard, but are reviewed *de novo* as a pure question of law. Additionally, to the extent that Ms. Howard argues that the trial court abused its discretion in starting trial without the presence of Appellant's counsel, Ms. Bastine-Robinson, those issues are addressed in this brief under issues three and four.

Disregarding the other issues raised by Ms. Howard that are addressed in other sections of this brief and focusing specifically upon the evidence admitted at trial, Ms. Howard does not point to a lack of evidence that would have contributed to an abuse of discretion. Nor has Ms. Howard provided this Court with any analysis, independent of the other grounds raised by her,

which would entitle her to a new trial under this abuse of discretion standard. In fact, Ms. Howard's briefing on this issue suggests that the trial court heard testimony from multiple witnesses, including two expert witnesses (one called by each of the parties). Nor does, Ms. Howard show how she was harmed. To the extent that Ms. Howard complains of a ground of reversal that is separate and distinct from the other issues raised by her, her briefing is simply not clear[24] and it should be dismissed.[25]

---

[24] Ms. Howard does not correctly cite the standard of review for a motion for new trial in the context of this appeal. Ms. Howard is mistaken that legal and factual sufficiency challenges are independent grounds of review. The correct standard of review is abuse of discretion.

[25] Rule 38 of the Texas Rules of Appellate Procedure requires the appellant's brief to contain a clear and concise argument of the contentions made, with appropriate citations to authorities and the Record. TEX. R. APP. P. 38.1(f).

## 4. ISSUE 6: FINDINGS OF FACT

ISSUE SIX: Was Appellant harmed by Appellant's preclusion to filing a Request for Findings of Fact and Conclusions of law due to resignation of the Trial Court judge?

Ms. Howard argues that she was "precluded from requesting findings of fact and conclusions of law." (Appellant's Br. 8.) In effect, Ms. Howard argues that because Judge Pratt resigned (on or about March 28, 2014) after signing the final order in this case on February 28, 2014, she was precluded from filing findings of fact and conclusions of law. Ms. Howard argues that only Judge Pratt can render findings of fact and conclusions of law in this case.

This is not a correct. A successor judge is authorized under TEX. R. CIV. P. 18 to make the findings of fact and conclusions of law. While Rule 18 does not refer specifically to findings of fact and conclusions of law, it provides that the successor judge shall hear ". . . all motions undisposed of. . . ." As noted in <u>Lykes Bros. S. S. Co., Inc. v. Benben,</u> 601 S.W.2d 418 (Tex.App. —Houston [14 Dist.] 1980), the Fourteenth Court of Appeals held that "a request for findings of fact and conclusions of law is a motion under Rule 18." <u>Storrie v. Shaw</u>, 96 Tex. 618, 75 S.W. 20 (1903). Fundamentally, a judge who succeeds a judge who has resigned after to rendering judgment is authorized

to make findings of fact and conclusions of law. TEX. R .CIV. P. 18 "allows successor judges to dispose of unresolved matters and enter various orders so long as the successor judge does not render judgment without hearing evidence." 2900 Smith, Ltd. v. Constellation NewEnergy, Inc., 301 S.W.3d 74, n. 6 (Tex.App.-Houston [14 Dist.] 2009); *see also* Fidelity & Guar. Life Ins. Co. v. Pina, 165 S.W.3d 416, 421 (Tex.App.-Corpus Christi 2005, no pet.) (noting that rule 18 operates in conjunction with section 30.002 of the remedies code, which allows the successor of a deceased judge to enter findings of fact and conclusions of law for cases pending at the death of his predecessor). Thus, Ms. Howard's argument that she was precluded from filing findings of fact and conclusions of law is incorrect.

Additionally, as noted above, final judgment contains findings. (1 C.R. at 23 - 24.) Because those findings do not conflict with findings in a separate document, those findings of fact should be accorded probative value. Thus, if the Court concluded that Ms. Howard was precluded from making findings of fact, there is no indication that she was harmed.

## PRAYER

For all of the above reasons, Appellee's Reply Brief, STEPHEN HENRY

HOWARD, respectfully requests that this Court:

1. affirm the judgment of the trial court.

Respectfully submitted,

**THE OGG LAW FIRM, PLLC**

/s/ R. Scott Poerschke

KIM K. OGG
State Bar No. 15230200
R. SCOTT POERSCHKE, JR.
State Bar. No. 24067822
CHRIS AINSWORTH
State Bar. No. 24072789
3215 Mercer, Suite 100
Houston, Texas 77027
Phone 713.974.1600
Fax 713.621.2106
kimogg@ogglawfirm.com
scott@ogglawfirm.com

**ATTORNEYS FOR APPELLANT**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to TEX. R. APP. P. 9.5(d), I, R. Scott Poerschke, certify that on February 12, 2015, a copy of Appellee's Reply Brief was served through the electronic filing manger.

/s/ R. Scott Poerschke
R. Scott Poerschke

## CERTIFICATE OF COMPLIANCE

I, R. Scott Poerschke, hereby certify this brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(3) because this brief contains approximately 12,795 words, excluding the parts of the brief exempted by Tex. R. App. 9.4(i)(1) and relying on the word court of Microsoft Word. This brief was prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 13-point Century Schoolbook font.

/s/ R. Scott Poerschke
R. Scott Poerschke